**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JUAN COYOTL VELAZQUEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

LE ROYALE LLC
d/b/a LA BONNE SOUPE,
SAINT JANE LLC
d/b/a HUDA NEW LEVANTINE BISTRO, and
GEHAD AL-HADIDI,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff JUAN COYOTL VELAZQUEZ (“Plaintiff”), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, LE ROYALE LLC d/b/a LA BONNE SOUPE, SAINT JANE LLC d/b/a HUDA NEW LEVANTINE BISTRO (the “Corporate Defendants”), and GEHAD AL-HADIDI (the “Individual Defendant” and collectively with the Corporate Defendants, the “Defendants”) and state as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid wages, including overtime, due to an invalid tip credit policy, (3) disgorgements of illegally retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid wages, including overtime, due to an invalid tip credit policy, (3) disgorgements of illegally retained gratuities, (4) unpaid spread of hours premiums, (5) unpaid call-in pay premiums, (6) unreimbursed costs for maintaining uniforms, (7) liquidated damages, (8) statutory penalties due to WTPA violations, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5. Plaintiff, for all relevant time periods, was a resident of Queens County, New York.

6. Individual Defendant owns and operates a restaurant enterprise, comprised of two (2) locations in New York that have been under the following trade names:

a. La Bonne Soupe, 48 W 55th St, New York, NY 10019;

b. Huda New Levantine Bistro, 312 Leonard St, Brooklyn, NY 11211;

(collectively, the "Restaurants")

7. At all relevant times, Corporate Defendants own and operate the Restaurants as a single integrated enterprise in the State of New York. All of the Corporate Defendants are interrelated to one another and are owned by Individual Defendant GEHAD AL-HADIDI:

(a) Defendants are engaged in the same business of operating bistros in New York City, offering food and beverage services to the public.

(b) All Restaurants are under the control of Defendants. Specifically, Individual Defendant GEHAD AL-HADIDI operates the totality of the Restaurants.

(c) The liquor licenses provided by the New York State Liquor Authority for LE ROYALE LLC and SAINT JANE LLC list Individual Defendant GEHAD AL-HADIDI as a "principal" of their restaurants. *See* **Exhibit A**.

(d) Pursuant to the New York State Liquor Authority Handbook for Retail Liquor Licensees, New York State liquor license holders must (1) prevent sales of liquor to minors, (2) prevent disorder, (3) confine service and consumption of liquor to the licensed area, (4) prevent sales of liquor to visibly intoxicated persons, (5) prohibit their businesses from offering unlimited drink specials, (6) ensure licensed restaurants have suitable kitchen facilities to prepare and serve a full menu whenever their business is open, (7) prevent individuals from appearing nude or partially nude on the licensed premises, (8) prevent the premixing of liquor, (9) prevent the refilling of liquor, (10) prevent possession of untaxed cigarettes & tobacco products, (11) prevent contamination of bottles, (12) maintain adequate books and records of all transactions involving the licensed business, (13) ensure proper identification of all beer taps, (14) ensure compliance with all stipulations

and conditions of the liquor license agreement, (15) comply with all state and local laws and regulations governing the operations of the licensed business. *See* **Exhibit B**. Because Individual Defendant GEHAD AL-HADIDI is the liquor licensee for both Restaurants, Individual Defendant GEHAD AL-HADIDI is required by New York State law to personally ensure both Restaurants comply with the above 15 requirements.

(e) NY Department of State, Division of Corporations lists Hadidi Capital LLC located at 48 W 55th St, New York, NY 10019 as the agent for both LE ROYALE LLC and SAINT JANE LLC. *See* **Exhibit C**.

(f) The Restaurants are publicly promoted by Hadidi Hospitality as affiliated restaurant concepts within a common hospitality group. Its website further identifies GEHAD AL-HADIDI as the owner and operator of both restaurants. *See* **Exhibit D.**

(g) Based on Plaintiff's personal observations, employees, including waitstaff and kitchen staff, regularly worked interchangeably among the Restaurants. Plaintiff personally worked shifts at Huda New Levantine Bistro during holiday events.

(h) The Restaurants share the payroll methods and have a single, centralized system of labor relations for employees. The Restaurants have applied the same payroll policies during the relevant statutory period.

8. All Corporate Defendants are appropriately named in this action because the Restaurants share identical illegal wage and hour policies and are under common ownership, management and control. The Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs and Class Members for whom Plaintiff seeks to represent.

9. Defendant LE ROYALE LLC d/b/a LA BONNE SOUPE is a New York State business corporation organized under the laws of the State of New York, with its principal place of business and address for service located at 48 W 55th St, New York, NY 10019.

10. Defendant SAINT JANE LLC d/b/a HUDA is New York State business corporation organized under the laws of the State of New York, with its principal place of business located at 312 Leonard St, Brooklyn, NY 11211, and its address for service located at 48 W 55TH St, New York, NY 10019.

11. Individual Defendant GEHAD AL-HADIDI owns and operates Corporate Defendants. Individual Defendant AL-HADIDI exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant AL-HADIDI—by himself or through managerial staff—exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By himself or through managerial staff, Defendant AL-HADIDI would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant AL-HADIDI exercised functional control over Defendant's business and its financial operations.

12. At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

13. At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

14. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all tipped non-exempt, front-of-house and back-of-house employees (including servers, waiters, bussers, bartenders, food runners, hostesses, counterpersons, delivery persons, chefs, cooks, line-cooks, food preparers, cashiers, porters, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, “FLSA Collective Plaintiffs”).

16. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants’ decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including: (i) unpaid wages, including overtime, due to Defendants’ time shaving policy, (ii) unpaid wages, including overtime, due to Defendants’ invalid tip credit policy and illegal tip retention policy, and (iii) unreimbursed costs for maintaining uniforms.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

18. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all tipped non-exempt, front-of-house and back-of-house employees (including servers, waiters, bussers, bartenders, food runners, hostesses, counterpersons, delivery persons, chefs, cooks, line-cooks, food preparers, cashiers, porters, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

19. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

21. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices

by Defendants, as alleged herein, of Defendants' failure to pay Plaintiff and Class Members their wages, including overtime, due to time shaving, Defendants' failure to reimburse for uniform maintenance, Defendants' failure to compensate Plaintiff and Class Members with call-in pay premiums, and Defendants' failure to compensate Plaintiff and Class Members with spread of hours premiums.

22. With regards to the Tipped Subclass, Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay proper minimum wages and proper overtime rates due to Defendants' invalid tip credit policy because Defendants (i) failed to properly provide tip credit notices at dates of hiring and annually thereafter, (ii) deducted tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowances for each payment period, and (iv) unlawfully misappropriated tips earned by Plaintiff and the Tipped Subclass.

23. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

24. Plaintiff is both able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in class action litigation, employment litigation, and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding hiring and terminating Plaintiff and Class Members;

d) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

e) Whether Defendants required Plaintiff and Class Members to spend over 20% of their shift doing non-tipped work;

f) Whether Defendants unlawfully deducted tip credits;

g) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

h) Whether Defendants illegally retained gratuities to pay other employees;

i) Whether Defendants properly compensated Plaintiff and Class Members with their call-in premiums;

j) Whether Defendants properly compensated Plaintiff and Class Members with their spread of hours premiums;

k) Whether Defendants reimbursed Plaintiff and Class Members for the cost of

maintaining their uniforms;

l) Whether Defendants properly provided written notice to Plaintiff and Tipped Subclass, in their native language, that Defendants were taking a tip credit;

m) Whether Defendants provided proper tip credit notice to Plaintiff and the Tipped Subclass members at hiring and annually thereafter;

n) Whether Defendants provided proper wage statements informing: (i) Tipped Subclass of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL;

o) Whether Defendants paid Plaintiff and Class Members for all hours they worked;

p) Whether Defendants provided Plaintiff and Class members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

q) Whether Defendants provided Plaintiff and Class members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

28. In or around June 2023, Plaintiff was hired to work as a busser at Defendants' La Bonne Soupe Restaurant located at 48 W 55th St, New York, NY 10019. Plaintiff's employment with Defendants ended in or around April 2026 when he was terminated.

29. At all relevant times, Plaintiff worked five (5) days per week, from Tuesday through Saturday. He was scheduled to work from 10:30 a.m. to 11:30 p.m. Tuesday through Thursday, and from 4:00 p.m. to 11:30 p.m. Friday and Saturday. During a six-month period in 2025, Plaintiff worked only two days per week. Plaintiff's schedule totaled fifty-one and one-half (51.5) hours per week from June 2023 until his termination, except during the six-month period in 2025, when he worked between two (2) and twenty-five (25) hours per week.

30. Throughout his employment, Plaintiff was compensated at a tip credited minimum wage rate due to a tip-credit deduction being taken from his hourly pay. FLSA Collective Plaintiffs and Tipped Subclass members were compensated at similar rates.

*Plaintiff's Time Shaving Claims*

31. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

32. Throughout his employment, almost every month Plaintiff was unable to accurately clock in and out for his shifts because the timekeeping machine was not functioning properly. On those occasions, management assured Plaintiff that his hours would be manually added to his timesheets. However, Plaintiff later observed that management failed to record his full hours worked and instead credited him with two to three fewer hours per shift than the actual time he worked.

33. At least a few times per week, after Plaintiff had already clocked out for his shift, management instructed Plaintiff to assist the bartender with side work and other closing duties. As a result, Plaintiff continued working off the clock for approximately 20 to 30 minutes after his recorded end time. In addition, Plaintiff was required to take a daily 30-minute unpaid meal break

during which he was instructed to clock out, but he performed work during his unpaid break periods without being compensated for that time.

34. At all relevant times, Defendants similarly subjected FLSA Collective Plaintiffs and Class Members to the same time shaving policy and required them to perform work without compensation.

35. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages and overtime wages to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours they worked due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

*Plaintiff's Invalid Tip Credit Policy Claims*

36. Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were subjected to Defendants' invalid tip credit policy, in violation of the FLSA and the NYLL.

37. Throughout Plaintiff's employments, Defendants deducted a tip credit from Plaintiff's, FLSA Collective Plaintiffs', and Tipped Subclass Members' wages.

38. However, Defendants were not actually entitled to deduct any tip credits from Plaintiff's wages under the FLSA or the NYLL because Defendants: (i) failed to properly provide tip credit notices at dates of hiring and annually thereafter; (ii) deducted tip credits from Plaintiff's wages for all hours worked despite having caused him to engage in non-tipped duties for over 20% of their workweeks; (iii) failed to provide proper wage statements clearly indicating tip credit allowances for each payment period, and (iv) subjected Plaintiff to an invalid tip pool and unlawfully misappropriated tips earned by Plaintiff. Similarly, Defendants are not entitled to claim any tip credit allowance from the Tipped Subclass members.

39. As a direct result of Defendants' invalid tip credit policy, Plaintiff and Tipped Subclass Members were paid below the New York State minimum wage in violation of the NYLL. *See* 12 N.Y.C.R.R. § 146-1.2, *et seq.*

40. Throughout Plaintiff's employments, Defendants required Plaintiff to engage in non-tipped duties such as polishing silverware and glassware, sweeping the restaurant, preparing and serving bread baskets with butter, taking out the garbage, accepting and unloading alcohol deliveries and transporting them to the basement for storage, cleaning the offices, among others. Plaintiff would spend approximately 3 hours per single shift doing non-tipped side work. Similarly, the Tipped Subclass members spent an average of three (3) hours or more than twenty percent (20%) of the total hours worked each shift on non-tipped duties. Despite Plaintiff, FLSA Collective Plaintiffs, and the Tipped Subclass members engaging in at least two (2) hours of non-tipped work, Defendants improperly claimed tip credit for all hours worked.

41. Additionally, Plaintiff and Tipped Subclass Members never received any notices from Defendants that Defendants were claiming a tip credit on their weekly compensation. They were never told by Defendants that Defendants were deducting tip credits from their wages nor did they ever receive proper notice by Defendants as to the amount of tip credit allowances Defendants deducted for each payment period during their employments.

42. In addition to the above, Defendants failed to compensate Plaintiff at the proper overtime rate required by law. For example, in 2024, Defendants compensated Plaintiff at an hourly rate of $15.98 for overtime hours, when the applicable statutory minimum overtime cash wage for tipped employees was no less than $18.65 per hour after the deduction of the tip credit at an hourly rate of $5.35. *See* **Exhibit E**, Sample of Plaintiff's Wage Statements. FLSA Collective

Plaintiffs and Tipped Subclass Members were similarly compensated at tip credit rates below the applicable tip credit minimum wage.

43. Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass Members. Defendants were not entitled to claim any tip credits under the FLSA and the NYLL.

*Illegal Retention of Gratuities*

44. Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members were subjected to Defendants' illegal retention of gratuities, in violation of the FLSA and the NYLL.

45. At all relevant times, Defendants utilized a tip pool whereby non-tipped employees, who did not provide tipped services to Defendants' clients, were included. These non-tipped employees included managers. Defendants' manager, Tiago (LNU), participated in the tip pool and received a portion of the pooled tips. In addition, Plaintiff personally observed Tiago (LNU) collecting cash tips from waitstaff, thereby retaining gratuities that had been left for tipped employees.

46. Plaintiff's, FLSA Collective Plaintiffs' and Tipped Subclass Members' tips and gratuities are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196-d.

47. Defendants knowingly and willfully operated their business with a policy of unlawfully retaining gratuities earned by Plaintiff, FLSA Collective Plaintiffs, and Tipped Subclass Members, in violation of the FLSA and the NYLL.

*Unpaid Spread of Hours Premiums*

48. At all relevant times, Defendants failed to provide spread of hours premiums to Plaintiff and Class Members for shifts in which the spread of hours exceeded ten (10) hours.

49. Plaintiff regularly worked shifts with a spread of hours exceeding ten (10) hours. Under 12 N.Y.C.R.R § 146-1.6, when the spread of hours for any day exceeds ten hours, an employee shall receive one additional hour of pay at the basic minimum hourly wage rate. Defendants failed to pay Plaintiff and Class Members this spread of hours premium.

50. Class Members who were required to work shifts with a spread of hours in excess of ten (10) hours were similarly not paid any spread of hours premiums.

51. Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums for shifts exceeding ten (10) hours, in violation of the NYLL.

*Claims of Unreimbursed Costs for Maintaining Uniforms*

52. Throughout Plaintiff's employment with Defendants, Plaintiff was required to maintain his own uniforms which consisted of two shirts with Restaurants' logo. Plaintiff worked five days per week and had to repeatedly alternate between the two shirts, requiring him to wash and iron his uniforms at least twice per week—often more—to maintain cleanliness and compliance with workplace standards. The limited number of uniforms furnished by Defendants was insufficient given the frequency of Plaintiff's work schedule. In total, Plaintiff spent $10 a week maintaining his uniforms.

53. Similarly, Class Members were also similarly not reimbursed by Defendants for the cost of maintaining their uniforms.

54. Defendants knowingly and willfully operated their business with a policy requiring Plaintiff and the Class Members to improperly cover uniform maintenance costs in violation of the NYLL.

*Plaintiff's Claims of Unpaid Call-in Pay Premiums*

55. Throughout his employment, Plaintiff would occasionally be sent home shortly after arriving at Defendants' restaurant for his scheduled shift. Specifically, beginning in or about January 2025, Plaintiff was frequently and unpredictably cut from his scheduled shifts and sent home within the first two hours after reporting for his scheduled shift. Despite requiring Plaintiff to report to work and then sending him home shortly thereafter, Defendants failed to provide Plaintiff with the call-in pay premiums. Similarly, Class Members were sent home from their scheduled shifts without receiving the call-in pay premiums to which they were entitled.

56. Defendants knowingly and willfully operated their business with a policy of not paying call-in pay premiums to Plaintiff and Class Members, in violation of the NYLL.

*WTPA Claims*

57. At all relevant times, Plaintiff and Class Members never received wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

58. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements

might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

59. New York Courts continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

60. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, and their earned wages, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

61. By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information

on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

62. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

63. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

64. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

65. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

66. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

67. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

68. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

69. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages for all hours worked, due to a policy of time shaving.

70. At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit. Defendants were not entitled to claim any tip credits from Plaintiff and FLSA Collective Plaintiffs under the FLSA.

71. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to Defendants' illegal tip retention policy.

72. At all relevant times, Defendants willfully failed to reimburse Plaintiff and FLSA Collective Plaintiffs for the cost of maintaining their uniforms, which resulted in them incurring additional damages on top of not being properly compensated for all hours they worked for Defendants.

73. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation (including tips) paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

74. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their tips and overtime premiums, when Defendants knew or should have known such was due.

75. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

76. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

77. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, illegally retained gratuities, and liquidated damages.

78. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

79. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

80. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

81. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failure to pay wages for all hours worked due to time shaving.

82. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by maintaining an invalid tip credit policy.

83. Defendants willfully violated Plaintiff's and Tipped Subclass Members' rights by illegally retaining their rightfully earned gratuities.

84. Defendants willfully violated Plaintiff's and Class Members' rights by failing to provide them with spread of hours premiums.

85. Defendants failed to compensate Plaintiff and Class Members with their call-in pay premiums, in direct violation of the NYLL.

86. Defendants willfully violated Plaintiff's and Class Members' rights by failing to reimburse them for the cost of maintaining their uniforms.

87. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

88. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

89. Due to Defendants' New York Labor Law violations, Plaintiff, Class Members and the Tipped Subclass Members are entitled to recover from Defendants their unpaid wages, including overtime, illegally retained gratuities, unpaid spread of hours premiums, unpaid call-in pay premiums, unreimbursed costs for maintaining uniforms, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, as a result of Defendants' time shaving, due under the FLSA and the NYLL;

d. An award of unpaid wages, including overtime due to Defendants' invalid tip credit policy, due under the FLSA and the NYLL;

e. An award of disgorgement of all improperly distributed tips, due under the FLSA and the NYLL;

f. An award of unpaid spread of hours premiums, due under the NYLL;

g. An award of call-in pay premiums due under the NYLL;

h. An award of unpaid wages due to Defendants' failure to reimburse for the cost for maintaining their uniforms under NYLL;

i. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

l. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

m. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n. Designation of this action as a class action pursuant to F.R.C.P. 23;

o. Designation of Plaintiff as Representative of the Class;

p. Designation of Plaintiff as Representative of the Tipped Subclass; and

q. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 17, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.